UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ROMON BOJORQUEZ,
   Plaintiff,

vs.                                                                 No. 07-1001

PATRICK FITZSIMMONS and THEODORE ALLEN,
   Defendants

## CASE MANAGEMENT ORDER

     This cause is before the court for consideration of whether the plaintiff fully exhausted his administrative remedies prior to filing this lawsuit.

### I. BACKGROUND

     The plaintiff, a state prisoner, first filed his complaint on January 3, 2007. On January 11, 2007, the court asked the plaintiff to provide copies of any grievances he had filed concerning this incident and any response he had received. *See* January 11, 2007 Text Order. The plaintiff complied.

     On February 2, 2007, the court conducted a merit review of the plaintiff's complaint and found that the plaintiff had adequately alleged that Defendants Correctional Officer Patrick Fitzsimmons and Lieutenant Theodore Allen violated the plaintiff's Eighth Amendment rights when the failed to protect the plaintiff from an inmate attack.

     It was after this point in the litigation the plaintiff informed the court that he spoke Spanish and was not able to speak or write English. The court held a hearing on this issue on August 21, 2007, and the defendants informed the court that they believed the plaintiff's case was barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). The court decided to determine this initial matter first and asked the parties to provide further information. The defendants filed a motion for summary judgement raising only the issue of whether the case was barred by *Heck*. The court also ordered the plaintiff to provide a response. The court found that the plaintiff's previous filings had been concise and easy to understand and noted that the plaintiff had been able to respond to the inquiry concerning filing grievances. *See* October 5, 2007 Court Order. The plaintiff filed a response, and the motion for summary judgement was ultimately denied. *See* September 8, 2009 Court Order.

     The court was able to appoint to University of Illinois College of Law students to

represent the plaintiff.   The first pretrial conference was held on March 2, 2009.  The court found that the list of Contested Issues of Fact was unacceptable and ordered the parties to redraft the proposed pretrial order.[1]  The second pretrial conference was held on March 6, 2009 and the court noted that the defendants had listed failure to exhaust administrative remedies under Contested Issues of Law, an issue that had not been addressed by the defendants in any prior hearing or motion.   Therefore, the court set the matter for further hearing on March 11, 2009 and asked the parties to provide further briefing on the issue.   The parties have complied.

## II. FACTS.

The following facts were established either during the March 11, 2009 court hearing or in the documents submitted to the court.

The plaintiff submitted a total of four grievances during the relevant time frame.  Two of those grievances make mention of the plaintiff's failure to protect claim.

A grievance dated September 28, 2005 purports to be filed due to "staff conduct" and "disciplinary report," but the body of the grievance is written in Spanish. (Def. Ex. 1).  During the hearing, the parties indicated that this grievance dealt with the issues in his first disciplinary hearing and the fact that he was not provided an interpreter.  The grievances is marked received, but no response is provided.

A second grievance dated September 28, 2005 is also written in Spanish and indicates that it was also filed due to "staff conduct" and "disciplinary report." (Def. Ex. 2)  However, the subject matter of this grievance is the plaintiff's allegation that correctional staff failed to protect him from the inmate attack.   The grievance was translated during the hearings and the plaintiff complains that, "he spoke with the officer in Unit I that I had problems with my cellmate," and "that Unit I officer told me to submit a request slip for the problems I told him about." (Def. Memo, p. 2).   The plaintiff asked for the institution to investigate the officers.

The court notes in the counselor's response section of the grievance, it states:

> Grievance interpreted by C/O Mottelor.  Grievant was having problems w/cell mate and received IDR which sent him to seg, but had no interpreter during IDR hearing.  IDR heard in Logan CC so grievance must be sent to ARB.

The court notes that Unit I was where the plaintiff's cell was located and where the fight took place, but the plaintiff admits neither of the named defendants worked on Unit I.

---

[1] Defense counsel was disputing facts that were within their knowledge such as #8, whether Defendant Fitzsimmons was currently retired.

The third grievance was submitted on October 11, 2005 and is written in English. The plaintiff complaints about the injuries he received in the fight and the fact that he had not received proper medical treatment. (Def. Ex. 8) The grievance is marked received on October 11, 2005, but no response is provided.

The fourth and final grievance is dated October 11, 2005 and is written in English. (Def. Ex. 9)  In this grievance, the plaintiff says correctional officers and a lieutenant failed to protect him despite his requests to be moved away from his cell mate.

> This has been going on for two weeks now, and I have complained to the c/o's and lt. numerous times that me and my celly, inmate Barrera #R07955 are having problems and don't get along whatsoever, to please move me or him to another cell because Inmate Barrera is a constant problem and to much trouble for me! But the c/o's and lt. Ignore the issue and refused to do something about the matter. (Def. Ex. 9, p 2)

> None of this would have happen if the c/o's and the Lt. would of took action and done something about the issue when I complained to them numerous times that me and inmate Barrera are having problems and not getting along.

The plaintiff testified during the March 11, 2009 hearing before this court that the c/o and lieutenant he was complaint about where the defendants. Lieutenant Allen and Correctional Officer Fitzsimmons.

In the relief requested section of this grievance, the plaintiff asks for the charges against him to be dismissed.  The grievance is marked received on October 12, 2005, but no response is provided.

The parties have also provided a copy of a hearing report from the Administrative Review Board dated December 14, 2005.  An interpreter was provided for the plaintiff.

> Offender Bojorquez stated that he had been arguing with his cellie, Barrera and told officers that they were having problems.  He stated that Offender Barrera told him he would stab him when he was sleeping.  He stated the Officers ignored them......He is asking for justice.  He stated he tried to tell them ahead of time. (Def. Ex. 5, ARB report).

The Administrative Review Board also notes that the "Offender's English communication was minimal." (De. Ex. 5, ARB report)

Administrative Review Board Member Terri Anderson testified during the March 11,

3

2009 court hearing that the ARB did not have the plaintiff's Spanish grievances translated. In addition, Ms. Anderson stated that the ARB did not issue responses specifically to the individual grievances. Ms. Anderson stated that to her knowledge the ARB did not review the plaintiff's claim that correctional staff failed to protect him from the attack.

The plaintiff was provided a copy of the Inmate Orientation Handbook when he entered the correctional facility, but the manual was written in English. The handbook has a section pertaining to the "Grievance Procedures for Offenders," but it does not mention the need to name the offending officers or provide a description if a name is not known. (Handbook, p.33) The handbook does say that offenders may obtain assistance from counselors in drafting their grievances. *Id.* Also, the handbook states that copies of the Illinois Department of Corrections rules may be found in the institutional library, and "[i]n the event of a language or literacy barrier, a staff member designated by Clinical Services will be available for assistance." (Handbook, p. 22).

## III. LEGAL STANDARD FOR EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary,* 255 F.3d 446, 450-51 (7th Cir. 2001). The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)

> The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v Bock,* 549 U.S. 199, 218 (2007)

The grievance procedure applicable to the Illinois Department of Corrections is set forth under Title 20 of the Illinois Administrative Code, Sections 504.800-504.850. Here are the stated requirements as of May 1, 2003:

> The grievance shall contain factual details regarding each aspect of the

offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of the individual are not know, but the offender must include as much descriptive information about the individual as possible. 20 Ill.Admin.Code §504.810(b).

If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e et seq. ("the PLRA"), does not define "availability" for purposes of the exhaustion requirement. Nonetheless, it is clear that a plaintiff's claims cannot be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809-10 (7th Cir.2006).

Exhaustion of administrative remedies is an affirmative defense. Therefore, the burden of demonstrating a plaintiff failed to exhaust his administrative remedies rests with the defendants. *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 1999). In addition, any factual disputes concerning exhaustion are to be resolved by the court, not a jury. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir.2008).

## IV. ANALYSIS

The defendants argue the plaintiff has not exhausted his administrative remedies for his claim that the defendants failed to protect him from an inmate assault because the plaintiff never filed a grievance naming Defendants Fitzsimmons and Allen, nor did he provide any description of the defendants in his grievances.

The defendants are correct that the plaintiff did not name any specific individuals in either of his grievances. In addition, the only vague description provided referred to Unit I officers and neither defendant worked on Unit 1. However, the plaintiff maintains that the defendants have not met their burden because the plaintiff did exhaust all *available* administrative remedies.

For instance, plaintiff argues that he was never provided a copy of the inmate handbook in Spanish. The defendants state that the proper rules are not in the handbook, but in the Illinois Administrative Code. The defendants say the pertinent rules were available in the library and the plaintiff could have asked for help from his counselor. Nonetheless, this does cause the court

some concern. How does the plaintiff know the rules are available in the library if that information is written in English? How does the plaintiff know he can ask for help if that information is written in English? How can the plaintiff ask his counselor for help when his counselor does not speak Spanish?

The court also notes that the plaintiff has not provided any information about efforts he made to obtain information about the grievance procedure. Nonetheless, the court has concerns about the availability of the grievance process to this inmate. *See Abel v Pierson,* 2008 WL 509466 at (S.D. Ill Feb. 13, 2008)("crucial questions regarding whether the (Spanish-speaking) plaintiff was given appropriate assistance in completing the grievance and navigating the appropriate administrative remedies remain.")

The plaintiff next argues that he exhausted all available administrative remedies because the Administrative Review Board did not respond to his failure to protect claim. The defendants counter that the plaintiff never properly identified the defendants in any initial grievance, so the actions of the board are irrelevant.

The defendants have a point. However, again the court has concerns about the process that was provided to this plaintiff. He did file two grievances that clearly complain about officers failing to protect him from the attack. In his first September 28, 2005 grievance, an officer interprets the grievance but little is mentioned about his failure to protect claim. Was the grievance properly translated? Was the plaintiff referring to Unit I as where he spoke to the officers or their assignment? The plaintiff clearly did complain about a failure to protect, but no response was ever provided. Why not?

The plaintiff's second grievance dated October 11, 2005 clearly states his claim, but does not specify any defendants. Again, no response at all was provided. Why not? If the identification of the offending officers was not sufficient, why was no counselor response provided (in either grievance) informing the plaintiff that his grievance was denied on this basis? This failure denied the plaintiff an opportunity to refile his grievance with this information. In addition, the department rules states that an offender who does not know the name of the officer may still file a grievance including "as much descriptive information about the individual as possible." 20 Ill.Admin.Code §504.810(b). An argument could be made that a Spanish speaking inmate who apparently was provided no help from the facility staff in filing a grievance written in English did provide as much information "as possible."

The plaintiff was not provided an interpreter or any assistance from the facility until the December 14, 2005 hearing before the Administrative Review Board. The plaintiff was allowed to state his claims. The plaintiff very clearly states the entire incident would not have happened if the officers had taken his concerns about his safety seriously and the plaintiff plainly states he

is seeking justice as a result. (Def. Ex. 5, ARB report). The board says it did not translate the grievances written in Spanish and did not consider any of the claims raised by the plaintiff other than his claim that he was not provided a translator at his disciplinary hearing. The board clearly noted that the plaintiff had minimal communication skills. Why was no response provided to his claim that officers failed to protect him from this attack?

Based on the record before the court, the court does not believe the defendants have adequately demonstrated that the plaintiff failed to exhaust all available administrative remedies or that the plaintiff even had an available remedy during the relevant time frame. The court finds the Seventh Circuit's reasoning stated in *Pavey v Conley,* 2006 WL 509447 at 5 (7TH Cir. Feb.1, 2006) compelling.

> We have stated that, when inmates cannot comply with grievance procedure without essential help from prison officials and that assistance is withheld, the failure of the officials to facilitate the grievance process effectively renders administrative remedies unavailable. *Dale v Lappin,* 376 F.3d 652, 656 (7th Cir. 2002) (vacating grant of summary judgment for defendants on failure-to-exhaust defense where inmate submitted evidence that prison officials failed to respond to his requests for required grievance forms); *Lewis v Washington,* 300 F.3d 829, 833 (7th Cir. 2002) (holding that administrative remedies are unavailable if prison officials fail to respond to prisoners' grievances); *see also Abney v McGinnis,* 380 F.3d 663, 667 (2nd Cir. 2004) (holding that defendants are "estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures"); *Mitchell v Horm,* 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in dismissing inmate's complaint for failure to exhaust administrative remedies when court did not address inmate's allegation that prison officials failed to provide necessary grievance forms); *Miller v Norris,* 247 F.3d 736, 740 (8th Cir. 1001) (explaining that grievance process "is not an 'available' remedy under §1997(e)a" if prison officials prevent its use). *Id.* at 5.

The case will proceed to trial on March 31, 2009.

In addition, the court is troubled by the fact that the defendants did not raise the issue of exhaustion of administrative remedies at any time prior to the final pretrial conference. The defendants did file an answer to the complaint raising failure to exhaust as an affirmative defense. However, the court notes that this is a standard form used by the Illinois Attorney General's office and this affirmative defense is consequently raised in every prisoner lawsuit. Defense counsel has provided no explanation for their failure to raise this preliminary issue in any previous hearing or motion.

**IT IS THEREFORE ORDERED that:**

**1) The defendants have failed to demonstrate that the plaintiff failed to exhaust all available administrative remedies.  This case remains set for jury trial on March 31, 2009.**

**2) The clerk shall issue a writ for the plaintiff's personal appearance at trial.**

**3) All non-party witnesses who are Illinois Department of Corrections employees or inmates shall appear by video conference.  The parties shall provide the clerk of the court   with a final list of all witnesses, their names and location for testimony on or before March 26, 2009.  The clerk shall issue the necessary video writs for trial.**

ENTERED this 23rd day of March, 2009


                              **s\Harold A. Baker**
                         _____
                              HAROLD A. BAKER
                         UNITED STATES DISTRICT JUDGE